IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBERT E. MOORE, SR.

                    Plaintiff,

          v.                          CASE NO.  12-3204-SAC

RYAN SUMMER,

                    Defendant.


## MEMORANDUM AND ORDER

     This pro se civil rights complaint was filed pursuant to 42
U.S.C. § 1983 by a Kansas prisoner.  The matter is before the court
upon defendant's Motion to Dismiss (Doc. 12).  Having examined
defendant's motion together with the Memorandum in Support, the First
Amended Complaint, and the relevant legal authorities, the court
finds that the First Amended Complaint states a plausible excessive
force claim, but that any claim against defendant in his official
capacity must be dismissed.  Accordingly, defendant's motion is
granted in part and denied in part.

## I.  FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

     The court takes judicial notice of *State v. Moore*, Case No.
10CR3055 (Jo.Co.Dist.Ct.).[1]  Records from this state criminal case

---

[1]     Generally, the sufficiency of a complaint must be determined from its
contents alone.  *See Casanova v.* Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010).
However, one exception is "matters of which a court may take judicial notice."

1

show that on December 14 and 15, 2010, Mr. Moore committed Attempted Robbery, 3 counts of Burglary, 2 counts of Theft, 2 counts of Aggravated Burglary, and Criminal Damage to Property.  He was convicted of these crimes in Johnson County District Court on August 31, 2012, and is currently serving the resulting sentences.

In his First Amended Complaint (Doc. 7), Mr. Moore alleges the following facts.  On the night of December 14, 2010, he "got left" in Desoto, Kansas.  He was trying to get home and attempted "to flag people down for help."[2]  "A woman called the police."  "The police labeled it as suspicious behavior."  By the time police got there, plaintiff "had been running to houses trying to get help," and "in the process . . . caught a ton of charges."[3]  The police were looking for him "for all kinds of charges" that he "wasn't sure of until (he) came into custody."  Plaintiff was "banging on a residence's door trying to wake someone up," but he started knocking when a police car pulled up.  Thus, as officers "were approaching the house" plaintiff was "knocking on the front door" of a residence.  The officers "pulled up to an unknown house that they seen (sic)

---

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).  The court also takes judicial notice of on-line records of the Kansas Department of Corrections regarding offenders within its custody and specifically its records regarding Mr. Moore.

[2]     In his original complaint, he additionally alleged that he "ended up getting into a fight" with someone, "had a criminal damage," and "ran for the police basically."

[3]     Plaintiff's complaint written in pencil is often illegible, but plaintiff has not objected to the court's summary of his allegations.

(plaintiff) outside of."  "The cops pulled in front of the house while (plaintiff) was standing in the yard "froze with his hands up." Defendant Corporal Ryan Summer jumped out of the patrol car and opened the back door releasing a police dog.  The dog ran past Mr. Moore because he was not a threat.  When Officer Summer saw that the dog had run past Moore, he called the dog back to him.  As the dog was on its way back to Officer Summer, it saw plaintiff and started coming at plaintiff.  Plaintiff panicked, went to the front door and started kicking the door.  Then "the dog put (plaintiff) under arrest."  The dog attacked plaintiff and injured his arm.  Plaintiff was "bleeding everywhere."  Plaintiff never came into contact with an officer, did not resist, never had a weapon or demanded anything from anyone, was not a threat or acting as one, and was just trying to get home. Officers were "right there" and took plaintiff to a squad car to pat him down.

Based on these allegations, Mr. Moore claims in his form complaint that defendant Summer violated his "constitutional rights" in that Summer "put a dog on" him without giving "a bite command" and deployed the dog for no lawful reason.  He asserts that defendant's act of deploying the police dog without warning under the alleged circumstances amounted to excessive force that resulted in injury to plaintiff.

The court screened plaintiff's First Amended Complaint as required by 28 U.S.C. § 1915A(a),(b) and 28 U.S.C. § 1915(e)(2)(B); and dismissed his Eighth Amendment claim of denial of medical treatment as merely alleging a delay in treatment as well as his claims against three of the four defendants.   The court found that a responsive pleading was required upon plaintiff's claim of excessive force incident to his arrest and ordered service of summons upon defendant Corporal Ryan Summer K-9 Officer, Lenexa Police Department.

Defendant Summer filed this Motion to Dismiss plaintiff's amended complaint.   In his motion, defendant contends that Mr. Moore fails to state a federal constitutional claim, that Officer Summer is protected from this suit for damages by qualified immunity, and that plaintiff's claim is barred by *Heck v. Humphrey*.   Plaintiff has not responded to defendant's motion.

## II.  LEGAL STANDARDS

### A.  *Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed.R.Civ.P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."   *Dubbs v. Head Start,*

*Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)(citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).  "[F]or purposes of resolving a Rule 12(b)(6) motion," a court must "accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)(citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)); *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which instead must be supported by facts.  *Iqbal*, 556 U.S. at 678-79; *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)(quoting *id.*).  In *Iqbal*, the Supreme Court set forth a two-prong analysis that begins with the court "identifying the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Iqbal*, 556 U.S. at 678-680; *Khalik*, 671 F.3d at 1188 ("Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory

statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable."). Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id. at 678* (citing *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (citations omitted). If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

> The Tenth Circuit has explained plausibility as follows:
>
> plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

*Khalik*, 671 F.3d at 1191. "A claim has facial plausibility when the plaintiff pleads factual content that "allow(s) the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**B. *Failure to State a Federal Constitutional Claim***

The sufficiency of a complaint is a question of law.   A complaint that was filed pro se must be liberally construed and the court must apply "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007)(citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Nevertheless, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Twombly*, 550 U.S. at 558.  A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney*, 113 F.3d at 1173-74.

### C.  *Excessive Force Claim*

Consideration of a motion to dismiss based upon the alleged insufficiency of a complaint is begun by setting forth "the elements a plaintiff must plead to state a claim . . . ." *See Iqbal*, 556 U.S. at 675; *Khalik*, 671 F.3d at 1192.  "42 U.S.C. § 1983 allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Village*, 739 F.3d 451, 459 (10th Cir. 2013).

The Supreme Court has long held that all claims of excessive force in the context of an arrest should be analyzed under the Fourth Amendment's reasonableness standard.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989)("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . .").  The Tenth Circuit has held that:

> The precise question asked in an excessive force case is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.

*Thomson v. Salt Lake* County, 584 F.3d 1304, 1313 (10th Cir. 2009); *Weigel v. Broad*, 544 F.3d 1143, 1151-52 (10th Cir. 2008).  A court assesses "objective reasonableness based on 'whether the totality of the circumstances justified the use of force' and 'pay(s) careful attention to the facts and circumstances of the particular case.'"

8

*Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).  This totality of the circumstances approach requires that a court consider and balance the following factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  "That perspective includes an 'examination of the information possessed by the [officers].'" *Weigel*, 544 F.3d at 1152 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  "[T]he Fourth Amendment 'does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones.'" *Fisher v. City of Las* Cruces, 584 F.3d 888, 894 (10th Cir. 2009 (quoting U.*S. v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994)).  "Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions . . . and require courts to indulge in unrealistic second guessing." *United States v. Sokolow*, 490 U.S. 1, 11 (1989).

The Circuit has explained that the "right to make an arrest or investigatory stop necessarily carries with it the right to use

9

some degree of physical coercion or threat thereof to effect it." *Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010)(*quoting Graham*, 490 U.S. at 396)). The Supreme Court acknowledges that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397; *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005)("[R]ecognizing that officers are sometimes forced to make split-second judgments in uncertain and dangerous circumstances."). The Tenth Circuit has further recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Lundstrom*, 616 F.3d at 1126.

Police dogs are undoubtedly a valuable tool for law enforcement officers. The Tenth Circuit noted the Sixth Circuit's opinion "that police dogs often can help prevent officers from having to resort to deadly force: '[t]he use of dogs can make it more likely that the officers can apprehend suspects without the risks attendant to the use of firearms in the darkness, thus, frequently enhancing the safety of the officers, bystanders and the suspect.'" *Thomson*, 584 F.3d at 1315 (citing *Robinette v. Barnes*, 854 F.2d 909, 912 (6th Cir. 1988)*; cf. Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994)(acknowledging the truth in the argument that the release of

a police dog in lieu of firing a gun at a suspect might have led to a better result for the suspect)).   The Tenth Circuit found "no need to deprive police officers of the benefit of these useful tools (i.e., police dogs) solely because they carry the potential to cause serious harm.  *Thomson, 584 F.3d at 1316.*  Thus, the Tenth Circuit has held that deployment of a police dog is not per se unconstitutional. However, they have also held that an officer's action can be found objectively unreasonable where a police dog trained to attack was released into a residential backyard without warning.

### D.  *Qualified Immunity*

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity."  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Toevs v. Reid*, 685 F.3d 903, 909 (10th Cir. 2012)(internal citations omitted). The Tenth Circuit has discussed the need for this defense:

> Although actions for damages provide an important remedy
> for individuals injured by governmental officials' abuse
> of authority, such actions sometimes subject officials to
> costly and harassing litigation and potentially inhibit
> officials in performing their official duties. *Anderson
> v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d
> 523 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102
> S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In order to balance

> these competing interests, courts recognize the affirmative defense of qualified immunity, which protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).  The Supreme Court has emphasized the broad protection qualified immunity affords, giving officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'"  *Behrens v. Pelletier*, 516 U.S. 299, 308, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

*Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001).  Thus, "[q]ualified immunity shields . . . state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, ___U.S.___ , 131 S.Ct. 2074, 2080 (2011)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012)(citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)); *Savannah v. Collins*, 547 Fed.Appx. 874, 876 (10th Cir. 2013).

The Supreme Court clarified the clearly established prong of the qualified immunity test as follows:

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.

*Ashcroft v. al-Kidd*, 131 S.Ct. at 2083; *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001); *Cillo v. City of Greenwood Village*, 739

12

F.3d 451, 460 (10th Cir. 2013); *see also Pearson*, 555 U.S. at 232.
While a case directly on point is not required, the Supreme Court
has held that "existing precedent must have placed the statutory or
constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131
S.Ct. at 2083; *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011).

In *Thomson*, the Tenth Circuit expressly declined "to deem a
police dog's ability to bite and hold to be sufficient to make (the
dog's) release, alone, an action of deadly force."[4]   *Thomson*, 584
F.3d at 1315.   In *Brown v. Whitman*, 651 F.Supp.2d 1216, 1226-27
(D.Colo. 2009), the court discussed other cases on deployment of a
trained police dog:

> A number of courts have found that conducting a search with
> a police dog trained to bite and hold a suspect without

---

[4]    The Circuit reasoned that:

> To hold otherwise could result in nearly every release of a police
> dog being considered deadly force. *See, e.g., Jarrett v. Town of
> Yarmouth*, 331 F.3d 140, 143 (1st Cir. 2003)(noting that undisputed
> evidence presented at trial indicated that the vast majority of
> jurisdictions train police dogs in the bite and hold method); *Watkins
> v. City of Oakland*, 145 F.3d 1087, 1091 (9th Cir. 1998)("Police dogs
> were trained and tested to bite solidly, bite hard, and hold on.");
> *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1550 (11th Cir. 1989)
> ("Dogs in the canine unit were trained to 'bite and hold' a suspect.
> This method of training is employed by many other police departments
> throughout the country.   The distinctive aspect of this training
> method is its aggressive nature: unless the handler countermands his
> order, the dog will seek to seize a suspect even if that individual
> complies with the officer's orders.   Thus, injury to the apprehended
> suspect is often inevitable."); *cf. Johnson*, 576 F.3d at 661 ("[W]e
> do not mean to minimize the unpleasantness of having a German Shepherd
> clamp onto one's arm or leg.   This does not mean, however, that the
> practice of deploying trained dogs to bite and hold suspects is
> unconstitutional per se; the situation might warrant the use of a dog
> that has been trained and that is under the control of the officer.
> . . .").

*Id.*

13

giving a warning of the dog's pending release and an opportunity to surrender peacefully may constitute excessive force. *See, e.g., Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2004)(holding that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender"), *abrogated in part on other grounds*, *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007); *Vathekan v. Prince George's County*, 154 F.3d 173, 180 (4th Cir. 1998)(holding that it would be objectively unreasonable to release a police dog into a house to search for a suspect without first giving a verbal warning); *Kopf v. Wing*, 942 F.2d 265, 268-69 (4th Cir. 1991)(reversing grant of summary judgment because the issue of whether or not officer gave a warning regarding the police dog was a genuine issue of material fact); *see also Burrows v. City of Tulsa*, 25 F.3d 1055, *3 (10th Cir. June 1, 1994)(Table)(holding that jury could have found officer's actions objectively unreasonable where police dog trained to attack was released into a residential backyard without warning). Conversely, no Tenth Circuit or Supreme Court precedent compels the conclusion that a verbal warning is mandatory in every case where a police dog is utilized. In fact, the Supreme Court has recognized that even in cases involving the use of deadly force, a warning should be issued "where feasible," rather than recognizing a per se rule on this issue. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). Similarly, the court in *Dennen v. City of Duluth*, 350 F.3d 786, 791 (8th Cir. 2003), held that deployment of a police dog without a leash did not constitute a per se use of excessive force, since certain circumstances raising concerns of officer safety may justify off-leash canine searches. Taken together, these cases demonstrate the highly fact sensitive nature of the excessive force inquiry under the Fourth Amendment generally, as well as in the specific context of use of canine force. *See Graham*, 490 U.S. at 396 (stating that the Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each case").

*Id.*

**D. *Heck v. Humphrey* Bar**

14

In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court considered whether a state prisoner could challenge the constitutionality of his state court conviction in a § 1983 civil suit for damages.  The Court held that,

> in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . .  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Id.* at 486-87 (emphasis in original).  The Court directed that when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his convictions or sentence.  If it would, the complaint for damages is barred unless the plaintiff demonstrates that the conviction or sentence has already been invalidated.  On the other hand, if the district court determines that plaintiff's action, even if successful, would not establish the invalidity of any criminal judgment against the plaintiff, the action is not barred by *Heck*.  *Id.* at 487 (emphasis in original).

## III.  DISCUSSION

### A.  *Official Capacity Claims*

15

Defendant is of course correct in his motion that plaintiff fails to state a claim against him in his official capacity.  It is well established that an official capacity suit is essentially the same as a suit against the governmental entity that employs the official, and is therefore barred by Eleventh Amendment Immunity. Plaintiff has alleged no facts to overcome governmental immunity. Accordingly, his official capacity claims against defendant Summer, if any, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and 28 U.S.C. § 1915A(b)(2).  This action thus proceeds against defendant Summer in his individual capacity only.

### B.  *Excessive Force Claim*

Defendant's arguments in his Motion to Dismiss that Mr. Moore failed to allege facts in the First Amended Complaint sufficient to state a federal constitutional claim are resolved under the same standards as his arguments that plaintiff failed to meet his burden, under the qualified immunity doctrine, to plead facts showing defendant violated a federal constitutional right.  Defendant cites the proper legal standards for an excessive force claim and generally contends that plaintiff has failed to state a plausible claim under the Fourth Amendment.  He argues that plaintiff fails to explain how either the deployment of the dog or the dog bite was excessive under the circumstances.  Defendant also argues that taking all of plaintiff's factual allegations as true, defendant's actions were

16

at all times reasonable.  In support, defendant recounts that police were looking for plaintiff for all kinds of serious charges and repeats plaintiff's allegations that when officers arrived on the scene, plaintiff stood quietly in the dark in the yard of a private residence.  Defendant adds that plaintiff never called out to police or announced his whereabouts and that plaintiff was not confined in an enclosed area.

However, Mr. Moore stated in his complaint that defendant Summer was an officer of the Lenexa Police Department and thus acting under color of state law at the time of plaintiff's arrest.  He stated that defendant Summer violated his federal constitutional rights by using excessive force incident to plaintiff's arrest.  He described factual circumstances to support his claims that force was unnecessary to effectuate his arrest.  Finally, plaintiff alleged that his arm was injured by the police dog.  The court has previously found and again finds that, accepting plaintiff's well-pled facts as true, he has plausibly alleged the violation of a federal constitutional right in his First Amended Complaint.

Defendant argues that plaintiff's claim that he was not given a warning before being bitten, standing alone, does not state a plausible claim for relief.  The court does not disagree with this statement of the law.  However, whether or not a warning was required depends upon the circumstances of the arrest.  Moreover, the lack

of warning is not all plaintiff claims.  Mr. Moore mainly claims that the dog was deployed for no good reason.

Defendant also points out that by plaintiff's own admission, he was not bitten by the police dog while he was merely standing in the yard with his hands up, but only "when he attempted to evade the dog and began to kick down the door of a private residence."  While it is true plaintiff admits he panicked, moved, and began kicking at a residential door after the dog came at him; the court cannot find from the facts before it that this negates plaintiff's claim of excessive force based on the totality of the circumstances.

Defendant argues that plaintiff's allegation that he was not a threat to anyone at the time of his arrest is a conclusion that is not entitled to a presumption of truth.  In support, he again recounts that plaintiff was standing "in a dark yard of a private residence" and has not alleged that he made his presence known to officers or that defendant Summer, upon his arrival at the scene, saw Moore standing with his hands up.  Contrary to this restatement of plaintiff's allegations, Mr. Moore alleged in his complaint that the officers saw him as they were approaching the residence and stopped at that particular residence because they saw him there.

The issue presented by the complaint is whether Officer Summer acted as a "reasonable officer" when he deployed the police dog to locate and/or apprehend Mr. Moore.  The fact that plaintiff

18

committed offenses on the day of his arrest might lead to an inference that he was fleeing from police after having committing several serious offenses.   On the other hand, his own allegations also raise the inference that he was left in DeSoto at night and seeking help to get home.   Mr. Moore alleges that he was just trying to get home, looking for help, and running "for" the police.   The court is not made aware by either party of the time the charged offenses were committed in relation to plaintiff's knocking on doors and trying to flag down cars in DeSoto.   It could be inferred from plaintiff's allegations that police only began to pursue him after a woman called police in DeSoto and reported suspicious behavior.   The court thus does not know if plaintiff was being pursued by police before he went around DeSoto trying to flag down traffic and banging on doors, or if that panicked behavior resulted in the charges.   The court believes that this is a very close case and is not blind to the possibility that Mr. Moore may not have revealed circumstantial details that could render the use of a police dog entirely reasonable. But the court cannot dismiss this pro se complaint at the pleading stage based upon speculation as to circumstances that have not been revealed by either party.   *See McCoy v. Myers*, 2015 WL 751936 (D.Kan. Feb. 23, 2015).

### C.   *Qualified Immunity Defense*

19

Defendant argues in his motion to dismiss that "irrespective of whether plaintiff" has alleged sufficient facts to state a plausible claim for excessive force, defendant is entitled to qualified immunity.  He asserts that "there is a presumption that police officers are immune from lawsuits seeking damages for conduct performed in the course of their jobs," which requires plaintiff to show that (1) a public official violated his federal constitutional rights and (2) these rights were clearly established at the time of the violation.  Again, the court does not disagree with defendant as to the applicable legal standards.

Defendant argues that plaintiff seeks to invoke the following rights: "that the use of a police service dog to locate and/or apprehend a suspect is *per se* unreasonable;" that a warning is to be "invariably provided before a police officer deploys his service dog" even to locate a suspect standing in a residential area at night in silence; and the officer is required call back the service dog when a suspect is finally located but flees from the service dog. Defendant argues that these assertions are not federal constitutional rights and, in any event, were not "clearly established" law.  In support of his arguments, defendant contends that there is no "binding authority" holding that the use of a police service dog to locate and/or apprehend a suspect is per se

20

unreasonable or that a warning is invariably required, even when the force used qualifies as deadly.

At the outset, the court finds that defendant's representation of the right(s) plaintiff seeks to invoke is not entirely accurate. Plaintiff does not claim that the deployment of a police dog is per se unconstitutional. Instead, he asserts that the deployment in this case was without reason. And, as noted, he alleges facts to support his assertion. Furthermore, that deployment of a police dog is not per se unconstitutional does not mean that it is always constitutional. An officer's use of a police dog may be unconstitutional if the deployment was not reasonable under the circumstances and caused injury. The same may be said with regard to plaintiff's claim of a lack of warning. Defendant's argument that plaintiff is asserting a right to have the officer call back the service dog when a suspect is finally located but flees from the service dog also misses the mark somewhat. Plaintiff alleges that the officer did call the dog back at some point, and has not argued in his complaint that the dog should have been called back after plaintiff panicked and attempted to evade the dog.

Defendant points out that plaintiff failed "to discuss the severity of his crimes, the threat that his actions posed to officers and the general public, and his act of attempting to evade defendant and the police dog. Defendant correctly notes that these are the

three important factors for the court to consider in determining whether the actions of the defendant officer were "objectively reasonable in light of the surrounding facts and circumstances." However, plaintiff alleged that he posed no threat to anyone. He thus discussed the threat factor by denying it.  As noted, he stated facts in his complaint to support his statement that he was not a threat, including that he was standing with his arms up when the police dog was deployed and that he never had a weapon.  Defendant has not countered that he reasonably believed plaintiff could have have a weapon or was a danger due to the nature of the charges against him.  Defendant's choice of a motion to dismiss to respond to plaintiff's complaint prevents him from making such allegations. The court has not been made aware of "exigent" or other circumstances in this case during plaintiff's arrest that made either deploying the dog or not giving a warning reasonable, which is not to say that there were none.  Contrary to defendant's reference to plaintiff's "act of attempting to evade Defendant," plaintiff alleged that he was standing in the yard with his hands up when he was seen by defendant.  He admits that he attempted to evade the police dog after it came at him.  The court took judicial notice of plaintiff's convictions of serious charges, and is not convinced that Mr. Moore was required to discuss the severity of his crimes in his complaint.

22

Plaintiff may be asserting that a warning must be provided before a police dog is deployed.  The court agrees with defendant that under clearly established law, the "deployment of a police service dog does not *always* require a warning, even when the dog bites a suspect."  This does not mean, however, that a warning is never required, and the court finds instead that the reasonableness standard should be applied to evaluate this circumstance.

At the time of Mr. Moore's arrest, controlling judicial opinions plainly held that law enforcement officers should not use more force than reasonably necessary to effectuate an arrest.  While this general proposition may not satisfy plaintiff's burden of showing clearly established precedent, many cases have been decided in which deployment of a police dog during an arrest was precisely at issue. *See McCoy*, 2015 WL 751936, at *5 (citing *Long v. Fulmer*, 545 Fed.Appx. 757, 760 (10th Cir. 2013)("[T]he inquiry is not whether the general right to be free from excessive force is clearly established--because it is—the inquiry is whether plaintiff has a clearly established right under the particular facts of this case.").  This court has found no case in which a decision was reached as to the propriety of the use of this particular type of force, that is deployment of a trained police dog, without at least a cursory application of the reasonableness standard.  *See e.g., Casey v. City of Federal Heights*, 509 F.3d 1278, 1285 (10th Cir. 2007) ("Graham establishes

23

that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest.")).  From its own survey of the relevant contemporary case law, the court finds that under the facts alleged in the complaint in this case, the law was clearly established that deployment of a trained police dog to find or apprehend a suspect, while not a constitutional violation per se, could amount to a federal constitutional violation under circumstances showing that the officer's conduct was not reasonable.

Defendant correctly observes that even if defendant made a mistake of judgment regarding the law or circumstances, reasonable mistakes are protected.  He argues that defendant's act of deploying the dog "under these circumstances" was "not so unreasonable that every officer would know such actions violate the established law." However, the court cannot find that the circumstances were reasonable based only upon plaintiff's allegations.  Plaintiff has provided factual allegations from his perspective.  He alleges that Officer Summer stopped at the house because he saw Mr. Moore and that he saw Moore standing in the yard with his arms raised before he deployed the dog.  Defendant has provided no facts as to the officer's perspective, which under the clearly established law is crucial. Thus, the court has before it only plaintiff's allegations as to the perspective of Officer Summer.  The court is mindful of the Supreme Court's instruction that in order to evaluate a claim of excessive

24

force, this court must view the facts from the perspective of the officer. *See Graham*, 490 U.S. at 396-97. And the court is instructed that in evaluating an excessive force claim, it must consider the totality of the circumstances. *Jiron v. City of Lakewood*, 392 F.3d 410, 414 (10th Cir. 2004)(citing *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)). Here, neither plaintiff nor defendant has provided a complete description of the encounter. This court has provided opportunities for both parties to provide additional information. Adequate information has not been forthcoming from either at this pleading stage. As a result, the court simply has insufficient factual information upon which to dismiss plaintiff's allegations of excessive force and none to evaluate defendant's assertions of reasonableness. Accordingly, the court finds that this matter is inappropriate for resolution on a motion to dismiss. This is not to suggest that this is not a proper case for resolution based upon the defense of qualified immunity.

In sum, plaintiff has alleged enough factual matter in his complaint to state a plausible claim for relief, and defendant's motion presents no factual basis for this court to draw a reasonable inference from the totality of the circumstances, including the officer's perspective, that defendant is entitled to qualified immunity. *See Savannah*, 547 Fed.Appx. at 876.

**C. *Heck v. Humphrey***

25

As the Tenth Circuit has noted, "the starting point for the application of Heck [ ] is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007).   The key inquiry is whether a plaintiff's success in the § 1983 action would necessarily invalidate that underlying conviction.   To make this determination, the court must consider the elements of the criminal offense of which the § 1983 plaintiff was convicted.   *See Martinez v. City of Alburquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999)(noting that the lawfulness of the arrest in the Supreme Court's hypothetical was a necessary element of the criminal offense of resisting arrest). This is not a case in which the plaintiff was convicted of resisting or evading arrest or of assault upon a law enforcement officer.   Cf. *McCoy*, 2015 WL 751936 at *4-*5.   Defendant cites *Heck* as a basis for his motion to dismiss, but does not provide the court with any information regarding the elements of plaintiff's offenses from which it might be determined that the those elements would be negated if Mr. Moore were eventually successful on his excessive force claim. While the court has taken judicial notice of plaintiff's criminal convictions of offenses committed on the same day as his arrest, it is not obliged to search for and discover the elements of his offenses from the state court record and construct a factual basis for defendant's motion based upon *Heck*.   The court has before it

26

insufficient facts to determine that plaintiff's state convictions could not coexist with a finding that excessive force was used during his arrest.  *Id.*

IT IS **THEREFORE BY THE COURT ORDERED** that defendant's Motion to Dismiss (Doc. 12) is granted in part and denied in part: granted with respect to plaintiff's official capacity claims, if any, and all such claims are dismissed based upon Eleventh Amendment immunity; and denied as against defendant in his official capacity.

IT IS **FURTHER ORDERED** that this matter is returned to the clerk of the court for random reassignment pursuant to D. Kan. R. 40.1.

IT IS SO ORDERED.

Dated this 31st day of March, 2015, at Topeka, Kansas.




**s/Sam A. Crow**
**U. S. Senior District Judge**

27